THE COUNTY OF COOK, Petitioner-Appellant, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (2nd Division)   No. 1—90—0039

Opinion filed June 4, 1991.

Cecil A. Partee, State's Attorney, of Chicago (LaVerne Rolle Saunders, Assistant State's Attorney, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE DiVITO delivered the opinion of the court:

The Illinois Local Labor Relations Board (the Board) found that the practice of Cook County (the County) of tape-recording the final grievance step before arbitration constituted an unfair labor practice. In this appeal, the County contends that (1) this action was barred by *res judicata* or collateral estoppel; and (2) the Board erred in finding that the actions of the County constituted an unfair labor practice.

On December 13, 1988, the Illinois Nurses' Association (the Association) filed an unfair labor practice charge with the Board, alleging that the County had violated sections 10(a)(1) and (a)(4) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, pars. 1610(a)(1), (a)(4)) (the Act) by continuing to tape-record the final grievance step before arbitration. The Board held a hearing concerning this charge on April 11, 1989.

The evidence adduced established that the County and the Association were parties to a collective bargaining agreement effective December 1, 1984, through November 20, 1987. Article 11, section 4, of this agreement provided for a three-step grievance procedure before submission to arbitration; however, in practice, there were actually four steps. They consisted of grievance hearings before (1) the immediate supervisor; (2) the designee of the hospital director; (3) the hospital labor relations unit; and (4) the chief administrative officer/hearing officer. The parties agreed to eliminate the third step during negotiations for the 1984-87 collective bargaining agreement; however, that step was not actually discontinued until some time

later. The 1984-87 collective bargaining agreement contained no reference relating to the tape recording of any step of the grievance procedure.

Notwithstanding the absence of authorization, the County began tape-recording the fourth step of the grievance procedure in 1983. The Association voiced no objection until the County began tape-recording the third step of the grievance procedure. On March 3, 1986, the Association filed a charge against the County, alleging that by tape-recording the third and fourth steps of the grievance procedure and the predisciplinary hearings, the County violated the same sections of the Act as those involved in the instant case. The Association, however, never protested the taping of the fourth-step hearings on the record of those hearings. Moreover, the Association did not protest the taping of fourth-step grievance hearings to the County in writing until 39 months after the County began recording them, and then it did so only because the County had begun the taping of the third step and predisciplinary hearings. *County of Cook*, 3 Pub. Employee Rep. (Ill.) par. 3013, No. L—CA—86—85 (ILLRB Feb. 4, 1987).

Following a hearing concerning the 1986 charge, the Board found that the tape recording of grievance sessions was a nonmandatory subject of bargaining, that is, it was a matter which could be implemented only by mutual agreement of the parties. The Board noted that the tape recording of these proceedings had a tendency to inhibit the free and open discussion necessary for successful collective bargaining. Nevertheless, the Board found that, by failing to protest the taping of fourth-step proceedings (those before the hearing officer) for over three years, the Association had waived any right to bargain over this practice and had acquiesced to it. Regarding the taping of third-step proceedings (those before the hospital labor relations unit, which have since been eliminated), the Board found that because the Association immediately protested the practice, its objection was timely and valid. It thus ordered the County to cease taping all grievance proceedings, except for the fourth step, as that had become an established procedure. *County of Cook*, 3 Pub. Employee Rep. (Ill.) par. 3013 (ILLRB Feb. 4, 1987).

Susan Bennett, the Association's chief negotiator for the 1987-90 collective bargaining agreement, testified at the hearing. She stated that between November 5, 1987, and October 10, 1988, the Association and the County met approximately 25 times to bargain over a successor agreement to the 1984-87 contract. During those negotiations, the subject of taping the prearbitration grievance sessions was

discussed on February 2, March 3, and April 13, 1988. Each time, Association representatives broached the subject.

At the February 2, 1987, session, Bennett informed John Kalchbrenner, assistant director of position classification for the County, that the Association objected to the County's continued practice of taping the grievance hearings and wanted to bargain on the issue. She told him that the taping of these sessions inhibited discussion and prohibited effective problem solving. In her opinion, this was particularly detrimental because the meeting with the hearing officer was the last opportunity to resolve the grievance before it was submitted to arbitration.

John Kalchbrenner testified on behalf of the County. He stated that the County began regularly taping the Association grievance meetings with the hearing officer in 1983. He disagreed with Bennett at the February 2 negotiating session, explaining that the County viewed the final step of the grievance process not as a problem-solving session, but as an opportunity for the hearing officer to listen to the facts and render a decision either upholding or overturning the hospital's response to the grievance. He told Bennett that the County needed to record these sessions so that the hearing officer could refer to the tapes when making his decision. Moreover, the taping relieved the hearing officer of taking notes at the hearing, thus enabling him to concentrate on the witnesses and their testimony.

On February 2, 1987, Bennett sent a letter to William Doyle, the County's chief administrative officer, stating that the Association was objecting to the tape recording of the prearbitration grievance hearings and asking that the County bargain over the issue. She further stated that there was "no mutual agreement to the tape recording of any discipline or grievance proceeding" and that the Association would no longer participate in any hearings, meetings, or other bargaining proceedings with the County which would be tape-recorded.

Doyle responded in a letter dated February 10, 1988. He stated that, pursuant to the prior decision by the Board, the County had a right to tape-record the prearbitration sessions and that the County would continue to do so "unless and until the *parties mutually agree* to something different." (Emphasis in original.) Doyle also wrote that if the Association refused to participate in grievance meetings on this basis, the County would have "no choice but to proceed with such proceedings *ex parte* and also explore its options under the Act."

On March 3, 1988, the issue of tape-recording was again raised at a collective bargaining meeting. Bennett told Kalchbrenner at that time that the Association still objected to the taping of grievance hearings, but would participate in the hearings under protest. She also stated that once the new contract became effective, the Association expected the County to cease its tape-recording. Kalchbrenner responded that the County's position remained unchanged.

On April 13, 1988, the parties again discussed the issue at a bargaining session. The same positions were asserted and the meeting ended without either party altering its position on the issue.

On April 20, 1988, Bennett wrote another letter to Doyle, again expressing the Association's objections to the taping of the hearings. She stated the Association's view that its present objection to this practice expressed in negotiations for a new collective bargaining agreement "cancels any implied agreement established by silence over time and practice." Doyle responded by a letter dated May 24, 1988, wherein he reiterated that the Board had previously ruled that tape-recording the final step of the proceedings " 'had become an established practice among the parties' " and that the Association's present objection did not cancel the past practice.

In the next several months following these letters, the issue of tape-recording was not raised by either party. On October 10, 1988, the parties settled on a new collective bargaining agreement, which was to be effective from December 1, 1987, through November 30, 1990. The new contract restated the grievance procedure contained in the 1984-87 agreement and was silent regarding the tape recording of the prearbitration hearings.

The first prearbitration grievance hearing to be conducted under the new contract was set for December 2, 1988. On December 1, 1988, Bennett contacted Kalchbrenner and asked that he instruct the County's hearing officer to refrain from tape-recording the hearing. Kalchbrenner refused Bennett's request and said that the County would continue to tape-record the hearings until the Board told it to do otherwise.

The December 2 grievance hearing was taped by the County's hearing officer and the Association participated under protest. In a letter to Kalchbrenner dated December 9, 1988, Bennett renewed the Association's objections to the taping of the December 2 hearing. There is no indication in the record that Kalchbrenner responded to this letter. On December 13, 1988, the Association filed its unfair labor practice charge with the Board, which found that the County's

tape-recording constituted an unfair labor practice. The County appeals from that finding.

# I

The County initially contends that the instant case is precluded by either *res judicata* or collateral estoppel. The County's contention is premised upon the previous ruling of the Board in connection with the 1986 charge brought by the Association.

The Board rejected the County's argument and so do we. We agree with the Board's conclusion that by objecting to the County's continued tape-recording of third-step proceedings (now those before the hearing officer) during collective bargaining for the 1987-90 contract, the Association withdrew its acquiescence to the practice.

The Illinois Supreme Court discussed both *res judicata* and collateral estoppel in *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959. It stated:

> "A prior judgment may have preclusive effects in a subsequent action under both *res judicata* and collateral estoppel. The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.'
> \* \* \*
> The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." (Emphasis in original.) (*Housing Authority*, 101 Ill. 2d at 251-52.)

The court further noted that *res judicata* is conclusive not only as to every matter offered in the first action, but also as to any other matter which might have been offered to sustain or defeat a claim or demand. In order for a previous judgment to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the previous action. *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 853, 510 N.E.2d 952.

It is clear that *res judicata* is not applicable to the instant action. In the 1986 case, the issue was whether the County, when requested by the Association, was obligated to bargain during the term of the contract over the practice of taping the hearings before the

hearing officer, a practice which had been in existence without objection for 39 months. In the earlier action, the Board held that the Association had acquiesced to the taping of those sessions, and thus the County was not obligated to bargain over the practice at that time. What was neither raised nor addressed was whether the County was permanently freed from bargaining with the Association on the subject of tape-recording those proceedings.

Moreover, *res judicata* could not be applied to bar the instant action because key circumstances have changed. Though the Association did not object for 39 months to the tape recording under the prior collective bargaining contract, it immediately objected at the first grievance hearing under the new contract. In addition, the Association's consistent pattern of objecting on the record during collective bargaining sessions and substantiating these objections with follow-up letters to the County further distinguishes the present situation from the prior one. These actions showed an intent to no longer acquiesce to the practice of tape-recording and represented a demand that there be collective bargaining on the issue.

■ Collateral estoppel is likewise unavailable to preclude the instant action. Because of the changed circumstances, as discussed above, there could be no "controlling fact or question material to the determination of both causes" which has been adjudicated in the prior proceeding. *Benton*, 157 Ill. App. 3d at 853; *Housing Authority*, 101 Ill. 2d at 252.

The County's reliance on *res judicata* or collateral estoppel to bar the instant action is unavailing.

## II

The County also contends that the Board erred in finding that the actions of the County violated the Act. The relevant portions of the Act provide:

> "§10. Unfair labor practices. (a) It shall be an unfair labor practice for an employer or its agents:
>
> (1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act or to dominate or interfere with the formation, existence or administration of any labor organization ***;
>
> * * *
>
> (4) to refuse to bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit, including, but not limited to,

the discussing of grievances with the exclusive representative." Ill. Rev. Stat. 1989, ch. 48, pars. 1610(a)(1), (a)(4).

■■■ The general rule is that courts will accord deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (*Hardin County Education Association v. Illinois Educational Labor Relations Board* (1988), 174 Ill. App. 3d 168, 173, 528 N.E.2d 737.) In this case, that agency is the Board. The Illinois Supreme Court has reasoned that "[a] significant reason for this deference is that courts appreciate that agencies can make informed judgments upon the issues, based on their experience and expertise." *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 153, 447 N.E.2d 295.

■■■ In the instant case, the Board found that the County violated its duty to bargain under the relevant sections of the Act by continuing to tape-record the final grievance session after the 1987-90 collective bargaining agreement became effective. The County argues that the Association's prior acquiescence to the taping means that it has forever waived the right to bargain on the issue. We reject that argument. It is a well-established principle of labor law that waiver of a statutorily protected right must be stated clearly and unmistakably. (*Metropolitan Edison Co. v. National Labor Relations Board* (1983), 460 U.S. 693, 708, 75 L. Ed. 2d 387, 400, 103 S. Ct. 1467, 1477.) Not only is the record devoid of any such statement of waiver, it is, to the contrary, replete with evidence of objection.

*Rosario v. Amalgamated Ladies' Garment Cutters' Union Local 10* (2d Cir. 1979), 605 F.2d 1228, cited by the County, is inapposite. *Rosario* involved the tape recording of disciplinary proceedings, which the court likened to a criminal trial. Because of the quasi-judicial nature of those proceedings, the court held that it was acceptable for them to be tape-recorded. The court distinguished that type of proceeding from a grievance session, which is a more informal meeting where openness and compromise are crucial, and which could be hindered by recordation.

The Board relied on *Bakery Workers (Nabisco Brands)* (1986), 272 NLRB 1362, for the proposition that a union could not insist upon the taping of collective bargaining and grievance sessions even though the parties had an eight-year past practice of doing so. By insisting on the taping of such sessions, the union illegally refused to bargain. The same argument applies at bar; the only difference is that the parties are reversed.

■■■ In the instant case, the Board reiterated that tape-recording grievance sessions is a nonmandatory subject of bargaining that can-

not be implemented without mutual agreement of the parties. Despite the Association's earlier acquiescence to the taping practice, the Board found that the Association had nullified its acquiescence by objecting to it during collective bargaining negotiations.

Based on the Board's expertise in this area and the fact that its findings are supported by the record and by case law, we are unable to say that the Board erred in holding that the County violated sections 10(a)(1) and (a)(4) of the Act.

Accordingly, the finding of the Illinois Local Labor Relations Board is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.