(No. 83949.—

KATE EHLERS, Appellee, v. THE JACKSON COUNTY SHERIFF'S MERIT COMMISSION *et al.* (William Kilquist, Sheriff of Jackson County, Appellant).

*Opinion filed June 18, 1998.*

HARRISON, J., dissenting.

Brian Albert Schroeder and Thomas F. McGuire, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant.

John R. Roche, Jr., of Western Springs, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Kate Ehlers, was employed as a sergeant at the Jackson County jail. The Jackson County Merit Commission (Merit Commission) terminated Sergeant Ehlers' employment for cause, acting upon a complaint filed by the defendant William Kilquist, sheriff of Jackson County. On administrative review, the circuit court of Jackson County confirmed Ehlers' dismissal. The appellate court reversed and ordered Ehlers reinstated. 289 Ill. App. 3d 1118. We allowed Sheriff Kilquist's petition for leave to appeal (166 Ill. 2d R. 315) and now reverse the appellate court and affirm the circuit court.

## FACTS

Ehlers began her full-time employment with the Jackson County sheriff's department in March of 1986. She was a member of a collective-bargaining unit represented by the Illinois Fraternal Order of Police Labor Council. There is no dispute that a collective-bargaining agreement covered Ehlers and that her employment could be terminated only for cause. The Merit Commission was the entity empowered to determine whether cause for discharge existed.

On January 7, 1995, Sheriff Kilquist suspended Ehlers without pay and filed a complaint with the Merit Commission seeking her discharge. The complaint requested a hearing on three disciplinary charges against Ehlers. First, that on January 3, 1995, Ehlers failed to fully or truthfully comply with an order directing her to produce a report for the sheriff concerning visits by her husband at the jail on December 26, 1994, and how much time she had spent outside the jail while she was on duty on that date. Second, that on January 5, 1995, Ehlers presented the sheriff with a second untruthful or inaccurate report regarding those matters. Third, that on January 5, 1995, immediately after Ehlers delivered her second report to the sheriff in his office, Ehlers refused to obey the sheriff's verbal order that she remain in his office and talk with him about the foregoing matters.

The Merit Commission conducted a hearing on the three charges. The evidence presented showed that, on December 26, 1994, Ehlers worked the day shift at the jail. Ehlers' husband visited the jail sometime that afternoon, and they went outside to smoke cigarettes for 10 to 20 minutes. They then returned to the building and stood in the dispatch room for about 10 minutes before Ehlers returned to her duties. Ehlers' husband remained in the area for a short time speaking with other individuals whom he knew.

On January 3, 1995, Lieutenant Earl Jacquot, Ehlers' immediate supervising officer, informed Ehlers that the sheriff wanted a written report from her concerning how many times her husband had visited the jail on December 26 and how long he had stayed. Sheriff Kilquist explained in his testimony that he wanted this statement because he had heard rumors that Ehlers had been out of the jail for lengthy periods of time and that, as sheriff, he was required to look into the matter. He directed Jacquot to obtain a detailed statement from Ehlers.

In response to Jacquot's request, Ehlers submitted the following statement to the sheriff:

"This statement is being made as per ordered by Sheriff Kilquist and as advised to me by Lt. Earl Jacquot.

On December 26, 1994, to the best of my knowledge and recollection, my husband, Curt, came to the Jail one time during the afternoon hours."

On January 5, 1995, Sheriff Kilquist instructed Jacquot to obtain a more detailed report from Ehlers. When Jacquot asked Ehlers to rewrite the report to provide additional details, she told him that she did not remember. Jacquot nevertheless directed Ehlers to write another report. Ehlers submitted the following as her second statement:

"On December 26, 1994, to the best of my knowledge and recollection, my husband, Curt, came to the Jail one time during the afternoon hours for a short period of time.

I was out of the Jail at 1255 hours and back in at 1305 hours and out at 1440 hours and back in at 1450 hours of the 26th of December, 1994, as is recorded in the Central Control Officers log (see attached) on that date. I would note that the portion of the log from which these times are taken has been scribbled through several times."

Beneath her signature, Ehlers wrote, "I am making these statements under duress."

Ehlers testified that, after writing her second statement, she attempted to contact her union representative by telephone, but he was not available. Ehlers wanted to speak to the union representative because she felt that disciplinary action was going to be taken against her and she was concerned for her job.

Sheriff Kilquist then called Ehlers and requested her to bring the second statement to his office. Ehlers told the sheriff over the telephone that she felt she was being harassed, to which he responded that she was not. Ehlers asked Officer George Schaefer to accompany her to the sheriff's office. Schaefer was the vice president of her local union. Schaefer understood that Ehlers had requested

him to accompany her because of his union position. Ehlers stated that she felt she needed a union representative present because she believed she "was going to possibly be interrogated for disciplinary reasons." The sheriff testified that he had "no intent whatsoever" to discipline Ehlers when he called her into his office, but just "wanted to find out what was going on."

Ehlers, Schaefer, and Sheriff Kilquist all testified about their meeting, and their testimony is the same in most respects. When Ehlers and Schaefer entered the sheriff's office, the sheriff was in an adjoining room. Ehlers said that she was placing the second report on his desk. The sheriff told Ehlers to sit down so he could speak to her and asked Schaefer to leave. Ehlers did not sit down. Ehlers testified she then told the sheriff that she wanted Schaefer present as her union representative. The sheriff again told Schaefer to leave, and he did so. Ehlers then told the sheriff that she would not speak to him without Schaefer present and turned to leave. The sheriff informed Ehlers that he would fire her if she left. As Ehlers left, she remarked that only the Merit Commission could fire her. The sheriff told Ehlers to go home.

Schaefer testified that, shortly after the meeting, Sheriff Kilquist told him that the meeting had started as "nothing," but was "totally blown up now." The sheriff's own report, written directly after the incident, stated that he had "advised Sergeant Ehlers that he was conducting an informal inquiry." Later, the sheriff suspended Ehlers without pay and filed the complaint with the Merit Commission seeking her dismissal.

The Merit Commission ultimately determined that the sheriff presented insufficient evidence to sustain the first two charges of the complaint. Those charges were dismissed and are not at issue in this appeal. The Merit Commission found, however, that the last charge against

Ehlers, concerning her refusal to obey the sheriff's order that she sit in his office and speak with him, was sustained by the evidence.

The Merit Commission held a second hearing to determine what type of discipline to impose on Ehlers for the sustained charge. The Merit Commission issued a decision via written order. Therein, the Merit Commission found that the sheriff had lawfully ordered Ehlers to sit in his office and speak with him, and that Ehlers' refusal to do so constituted insubordination. The Merit Commission found in aggravation that Ehlers displayed no remorse for her insubordination, and that she had been disciplined on one prior occasion for failing to obey an order. The Merit Commission discharged Ehlers from her employment effective January 7, 1995.

Ehlers subsequently filed a complaint for administrative review with the circuit court. The circuit court confirmed the Merit Commission's decision, holding that the Merit Commission's discharge of Ehlers for her direct disobedience of the sheriff's order was not arbitrary or unreasonable.

The appellate court reversed. Relying on *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 43 L. Ed. 2d 171, 95 S. Ct. 959 (1975), and *Departments of Central Management Services & Corrections (Gerald Morgan)*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54 (ISLRB September 13, 1985), the appellate court held that Ehlers had the right to have a union representative present with her at the meeting with the sheriff. Consequently, the appellate court reasoned, the sheriff's order to Ehlers that she remain in his office and speak to him without union representation was an unlawful order and Ehlers could not be discharged solely for disobeying an unlawful order. The appellate court ordered that Ehlers be restored to her former employment status as of the effective date of her discharge. We

granted Sheriff Kilquist's petition for leave to appeal. 166 Ill. 2d R. 315.

The sheriff filed a motion asking us to strike a portion of Ehlers' brief for failure to cite sufficient authority. That motion, earlier ordered taken with the case, is hereby denied.

## ANALYSIS

This case comes to us on administrative review. The scope of a court's review of an agency's decision to discharge is generally a two-step process. The court first decides "whether the agency's finding of guilt is contrary to the manifest weight of the evidence." *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983). Here, the parties do not dispute the Merit Commission's finding that Ehlers deliberately disobeyed the sheriff's order. The parties' dispute centers on whether the order was lawful or unlawful. Our inquiry thus concerns only the second step. Pursuant to the second step, we must determine whether the Merit Commission's findings of fact supported its conclusion that cause existed for Ehlers' discharge. See *Walsh*, 96 Ill. 2d at 105. "Cause" has been defined as "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 360 (1963). A reviewing court shall respect an agency's finding of cause and shall not overturn an agency's finding that cause for discharge exists unless that finding is " 'arbitrary and unreasonable or unrelated to the requirements of the service.' " *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 435 (1992), quoting *Walsh*, 96 Ill. 2d at 105.

The appellate court held that cause for Ehlers' dis-

charge did not exist because the sheriff's order to Ehlers that she remain in his office and speak to him without union representation was an unlawful order. The appellate court based its holding on the decisions in *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 43 L. Ed. 2d 171, 95 S. Ct. 959 (1975) (hereinafter *Weingarten*), and *Departments of Central Management Services & Corrections (Gerald Morgan)*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54 (ISLRB September 13, 1985) (hereinafter *Morgan*). We therefore begin our analysis with a review of *Weingarten* and *Morgan*.

In *Weingarten*, 420 U.S. 251, 43 L. Ed. 2d 171, 95 S. Ct. 959, a private sector employee requested but was denied the presence of a union representative during an interrogation by her employer about suspected thefts at the employer's store. The union filed an unfair labor practice charge with the National Labor Relations Board (NLRB). The union asserted that the employer's action constituted an unfair labor practice under section 8(a)(1) of the National Labor Relations Act (NLRA) (29 U.S.C. § 158(a)(1) (1970)), in that it interfered with, restrained, and coerced the individual right of the employee, protected by section 7 of the NLRA, "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" (29 U.S.C. § 157 (1970)). The NLRB agreed with the union. The NLRB construed section 7 as giving employees covered under the NLRA the right to have a union representative present during an employer's investigatory interview when the employee requests union representation and reasonably fears that disciplinary action may result.

The United States Supreme Court upheld the NLRB's interpretation of section 7. By this holding, the Court established what is now commonly called the *Weingarten* rule or *Weingarten* rights. The Supreme Court explained

that the source of the *Weingarten* rule is statutory: it "inheres" in section 7's "guarantee of the right of employees to act in concert for mutual aid and protection." *Weingarten*, 420 U.S. at 256, 43 L. Ed. 2d at 177, 95 S. Ct. at 963. The Court also set forth the general "contours and limits" of *Weingarten* rights, as previously established by the NLRB. The "right arises only in situations where the employee requests representation" and "where the employee reasonably believes the investigation will result in disciplinary action." *Weingarten*, 420 U.S. at 257, 43 L. Ed. 2d at 178, 95 S. Ct. at 963-64. Moreover, the employee's exercise of the right may not interfere with "legitimate employer prerogatives." *Weingarten*, 420 U.S. at 258, 43 L. Ed. 2d at 178, 95 S. Ct. at 964. For example, once *Weingarten* rights are invoked, the employer may decline to continue the interview and opt to conduct its investigation using only information gathered from sources other than the employee. *Weingarten*, 420 U.S. at 258-59, 43 L. Ed. 2d at 178-79, 95 S. Ct. at 964.

As stated, *Weingarten* rights apply to employees covered by the NLRA. In *Morgan*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54 (ISLRB September 13, 1985), the Illinois State Labor Relations Board (State Board) extended *Weingarten* rights to public employees covered by the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/1 *et seq.* (West 1992)). The State Board in *Morgan* reasoned that *Weingarten*-type rights are inherent in section 6 of the Act, which, mirroring section 7 of the NLRA, guarantees certain public employees the right "to engage in *** concerted activities *** for the purpose of collective bargaining or other mutual aid or protection." *Morgan*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54, at VIII—120 (ISLRB September 13, 1985), quoting Ill. Rev. Stat., 1983 Supp., ch. 48, par. 1606. According to the State Board, a public employer's

violation of a public employee's *Weingarten*-type rights could constitute an unfair labor practice in violation of section 10 of the Act (Ill. Rev. Stat., 1983 Supp., ch. 48, par. 1610). The *Morgan* decision was not appealed to the courts.

The appellate court in the present case adopted and applied the State Board's decision in *Morgan* and held that Ehlers, a public employee covered by the Act, had *Weingarten*-type rights. The appellate court ordered Ehlers reinstated after finding that the sheriff had violated those rights. To date, no other Illinois court has adopted *Weingarten* or *Morgan* with regard to *Weingarten*-type rights. Our research reveals, however, that, like the State Board, both the Illinois Local Labor Relations Board and the Illinois Educational Labor Relations Board have found *Weingarten*-type rights to be implicit in the statutes that they administer. *City of Chicago (Police Department)*, 5 Pub. Employee Rep. (Ill.) par. 3025, No. L—CA—89—094 (ILLRB August 23, 1989) (also interpreting the Illinois Public Labor Relations Act); *Summit Hill School District 161*, 4 Pub. Employee Rep. (Ill.) par. 1009, No. 86—CA—0090—C (IELRB December 1, 1987) (interpreting the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 1992))).

Sheriff Kilquist contends that the appellate court erred in relying on *Weingarten* and *Morgan* to set aside Ehlers' discharge. The sheriff maintains that *Weingarten*-type rights should not be extended to public employees such as Ehlers. He correctly points out that the State Board's decision in *Morgan* is not binding on this court and urges us to reject *Morgan*'s reasoning outright. According to the sheriff, the Illinois General Assembly has never intended that public employees have *Weingarten*-type rights. Sheriff Kilquist contends, in the alternative, that Ehlers' own collective-bargaining agreement waived any *Weingarten*-type rights that she had.

In response, Ehlers acknowledges that the *Weingarten* decision applies only to employees covered by the NLRA. She contends, however, that the State Board in *Morgan* properly construed the Illinois Public Labor Relations Act as extending *Weingarten*-type rights to public employees covered under that Act.

We need not determine in this case whether *Weingarten*-type rights should be extended to public employees such as Ehlers. Even assuming, *arguendo*, that Ehlers had *Weingarten*-type rights, her own collective-bargaining agreement expressly waived those rights here. The appellate court erroneously bestowed upon Ehlers rights that her labor union had surrendered during the collective-bargaining process.

A collective-bargaining agreement can waive *Weingarten* rights. *Prudential Insurance Co. v. National Labor Relations Board*, 661 F.2d 398, 400-01 (5th Cir. 1981). The reason for this rule has been stated as follows:

> "A union is allowed a great deal of flexibility in serving its bargaining unit during contract negotiations. It makes concessions and accepts advantages it believes are in the best interest of the employees it represents. [Citations.] This flexibility includes the right of the union to waive some employee rights, even the employee's individual statutory rights. *** The union should therefore be able to waive the employee's *Weingarten* right for other concessions during negotiations." *Prudential Insurance Co.*, 661 F.2d at 400-01.

Application of this waiver rule is illustrated in *Prudential Insurance Co. & Marie Spencer*, 275 N.L.R.B. 208 (1985). There, an employee covered under the NLRA requested union representation at an investigatory interview that she reasonably believed could result in discipline. Her employer denied the request and conducted the interview in reliance on the following clause of the employee's collective-bargaining agreement:

> " 'The Union further agrees that neither the Union nor its members shall interfere with the right of the Employer:

\*\*\*

(b) To interview any Agent with respect to any phase of his work without the grievance committee being present.' " *Prudential Insurance Co.*, 275 N.L.R.B. at 208.

The NLRB held that this clause constituted a clear and unmistakable waiver by the union of the employee's *Weingarten* rights. The NLRB further explained that it would not alter the plain meaning of this contractual provision, earlier agreed upon, simply because one party to the contract was no longer happy with it. *Prudential Insurance Co.*, 275 N.L.R.B. at 210.

We are persuaded that, even if public employees have *Weingarten*-type rights, their union can contractually waive those rights. Where a union contractually waives the *Weingarten*-type rights of its members, a court must enforce the contract as written.

In the present case, Ehlers' collective-bargaining agreement provided in part:

"Whenever a law enforcement employee is under investigation, or subjected to interrogation by the Sheriff's Department, for any reason, which could lead to disciplinary action, or dismissal, the investigation or interrogation shall be conducted in accordance with the provision of the Uniform Peace Officers' Disciplinary Act."

The parties agree that Ehlers was "a law enforcement employee" within the meaning of the collective-bargaining agreement. As the sheriff asserts, the plain language of the collective-bargaining agreement, above, required his "investigation" of Ehlers to be "conducted in accordance with the provision of the Uniform Peace Officers' Disciplinary Act" (Uniform Disciplinary Act) (50 ILCS 725/1 *et seq.* (West 1992)). This language in Ehlers' collective-bargaining agreement expressly invoked the Uniform Disciplinary Act and mandated that any investigation of Ehlers be conducted in accordance with its terms.

The Uniform Disciplinary Act contains a provision

that specifically concerns the presence of a union representative. It provides:

> "If a collective bargaining agreement requires the presence of a representative of the collective bargaining unit during investigations, such representative shall be present during the interrogation, unless this requirement is waived by the officer being interrogated." 50 ILCS 725/3.9 (West 1992).

Under this provision, a union representative shall be present only (1) during an "interrogation" (2) if the collective-bargaining agreement requires the presence of a representative during investigations.

Significantly, as to the first requirement, the word "interrogation" is a term of art. The Uniform Disciplinary Act defines "[i]nterrogation" as "the questioning of an officer pursuant to the formal investigation procedures" but not "questioning (1) as part of an informal inquiry or (2) relating to minor infractions of agency rules which may be noted on the officer's record but which may not in themselves result in removal, discharge or suspension in excess of 3 days." 50 ILCS 725/2(d) (West 1992). A "[f]ormal investigation" is defined as "the process of investigation ordered by a commanding officer during which the questioning of an officer is intended to gather evidence of misconduct which may be the basis for filing charges seeking his or her removal, discharge or suspension in excess of 3 days." 50 ILCS 725/(2)(c) (West 1992). In contrast, an "informal inquiry" is "a meeting by supervisory or command personnel with an officer upon whom an allegation of misconduct has come to the attention of such supervisory or command personnel, the purpose of which meeting is to *** discuss the facts to determine whether a formal investigation should be commenced." 50 ILCS 725/2(b) (West 1992). The Uniform Disciplinary Act therefore provides that, under its terms, law enforcement officers are not entitled to union representation unless they are undergoing an

"interrogation" as opposed to an "informal inquiry," as those terms are defined therein.

We now turn to a discussion of the second requirement, whether the collective-bargaining agreement requires the presence of a union representative during investigations. Ehlers points out that her collective-bargaining agreement contains additional language addressing her right to a union representative. That language provides:

> "At the request of the employee under interrogation, [the employee] shall have the right to be represented by a representative of the [union] who shall be allowed to be present at all times during the interrogation."

Like the Uniform Disciplinary Act itself, this sentence in the collective-bargaining agreement clearly grants Ehlers the right to a union representative only during an "interrogation." We conclude that, by providing the right to a union representative only during an interrogation, Ehlers' collective-bargaining agreement necessarily withheld the right to union representation in all other circumstances. The dispositive inquiry here thus becomes whether Ehlers was being subjected to an interrogation.

The evidence in this case reveals that Ehlers was not subjected to an interrogation within the meaning of the Uniform Disciplinary Act. The sheriff testified that, when he asked Ehlers to speak with him, he was only seeking to find out what happened on December 26, 1994, and that he had no intention whatsoever of disciplining Ehlers when he first called her into his office. The sheriff was seeking only to "find out what was going on." The Uniform Disciplinary Act expressly distinguishes between formal "interrogations" and "informal inquiries," as noted above. The sheriff's intended interview of Ehlers was an informal inquiry under the Uniform Disciplinary Act's definitions. There was a meeting between the sheriff and Ehlers, regarding whom rumors of misconduct had come to the sheriff's attention, and the meeting's

purpose was to discuss the facts to determine whether a formal investigation of Ehlers was necessary. See 50 ILCS 725/2(b) (West 1992). Ehlers' refusal to obey the sheriff's orders upon entering his office did not work to transform his informal inquiry of her into a formal interrogation. Because Ehlers was not being subjected to an interrogation within the meaning of the Uniform Disciplinary Act, she had no right to a union representative under the terms of her own collective-bargaining agreement. Ehlers' collective-bargaining agreement thus waived any *Weingarten*-type rights that she otherwise may have had during an informal inquiry such as that which occurred here.

Accordingly, we hold that Ehlers' collective-bargaining agreement waived any possible *Weingarten*-type rights that she may have had to the presence of a union representative while undergoing the sheriff's informal inquiry. The appellate court therefore erred in granting Ehlers this right. Since the appellate court's setting aside of Ehlers' discharge was premised solely on the existence of this right, the appellate court's decision must be reversed. We find no other basis for upholding the appellate court's decision. Consequently, we affirm the circuit court, which confirmed the Merit Commission's determination that cause for Ehlers' discharge existed. The Merit Commission's determination that cause for Ehlers' discharge existed is not arbitrary and unreasonable or unrelated to the requirements of her service.

Having resolved this appeal, we need not address Sheriff Kilquist's remaining contentions.

## CONCLUSION

For the reasons given, the appellate court's decision is reversed. The circuit court's decision, confirming the

ruling of the Jackson County Merit Commission, is hereby affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON, dissenting:

Section 2 of the Illinois Public Labor Relations Act provides:

"It is the public policy of the State of Illinois to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 1992).

In accordance with this policy, the General Assembly has determined that

"Employees of the State and any political subdivision of the State, excluding employees of the General Assembly of the State of Illinois, have, and are protected in the exercise of, the right of self-organization, and may form, join or assist any labor organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment, not excluded by Section 4 of this Act, and to engage in other concerted activities not otherwise prohibited by law for the purposes of collective bargaining or other mutual aid or protection, free from interference, restraint or coercion." 5 ILCS 315/6 (West 1992).

This statute parallels section 7 of the National Labor Relations Act (29 U.S.C. § 157 (1994)). The National Labor Relations Board has construed section 7 to create "a statutory right in an employee to refuse to submit without union representation to an interview which [the employee] reasonably fears may result in his discipline." *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 256, 43 L. Ed. 2d 171, 177, 95 S. Ct. 959, 963 (1975). The United States Supreme Court has upheld the NLRB's construction, declaring that it "plainly effectuates the most fundamental purposes of the Act" (*Weingarten*, 420 U.S. at 261, 43 L. Ed. 2d at 180, 95 S. Ct. at 966), "gives recognition to the right when it is

most useful to both employee and employer" (*Weingarten*, 420 U.S. at 262, 43 L. Ed. 2d at 181, 95 S. Ct. at 966), and "is in full harmony with actual industrial practice" (*Weingarten*, 420 U.S. at 267, 43 L. Ed. 2d at 183, 95 S. Ct. at 968).

Shortly after the Illinois Public Labor Relations Act was promulgated, the Illinois State Labor Relations Board adopted the approach taken by the NLRB and the United States Supreme Court in *Weingarten* and held that the Illinois Public Labor Relations Act's guarantee to employees of the right "to engage in *** concerted activities *** for the purposes of collective bargaining or other mutual aid or protection" (5 ILCS 315/6 (West 1992)) likewise "encompasses the right to refuse to submit to an investigatory interview without union representation where the employee reasonably fears that the interview might result in discipline." *Departments of Central Management Services & Corrections (Gerald Morgan)*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54, at VIII—120 (ISLRB September 13, 1985) (hereinafter *Morgan*). Under *Morgan*,

"if the employee requests [union] representation and the request is denied, the employer cannot continue the interview without violating the [Illinois Public Labor Relations] Act. If [the employer] disciplines the employee for refusing to continue in the absence of representation, the employer is, in effect, retaliating against the employee because he has engaged in protected concerted activity, and such conduct is clearly [an unfair labor practice] violative of Section 10(a)(1) of the Act." *Morgan*, 1 Pub. Employee Rep. (Ill.) par. 2020, No. S—CA—54, at VIII—120 (ISLRB September 13, 1985).

The *Weingarten* rule, adopted by *Morgan*, was followed by the Illinois Local Labor Relations Board in a case involving a peace officer (*Chicago Police Department (James E. Kostro)*, 4 Pub. Employee Rep. (Ill.) par. 3006, Nos. L—CA—87—191, L—CA—87—208 (ILLRB Febru-

ary 26, 1988)) and was properly adopted by the appellate court in the matter before us today.

In urging a contrary conclusion, Sheriff Kilquist asserts that the *Weingarten* rule should not be extended to public employees because they enjoy protection not shared by employees in the private sector. This argument is untenable. Taken to its logical conclusion, it would mean that public employees should not even be permitted to organize and bargain collectively. While a current majority of this court may regard that as a good idea (see, *e.g., City of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191 (1998); *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board,* 178 Ill. 2d 333 (1997); *American Federation of State, County & Municipal Employees v. Department of Central Management Services,* 173 Ill. 2d 299 (1996); *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board,* 166 Ill. 2d 296 (1995), such anti-union bias reflects a value system that was expressly rejected by the people of Illinois through their elected representatives when they enacted the Illinois Public Labor Relations Act.

Having no legitimate basis for assailing the appellate court's conclusion that the *Weingarten* rule is applicable to public employees under the Illinois Public Labor Relations Act, but incapable of overcoming its innate hostility to union activities by public employees, the majority takes the only course left open to it. It resorts to the doctrine of waiver.

The threshold problem with the majority's approach is that Sergeant Ehlers, herself, waived nothing. To the contrary, her invocation of the right to union representation under *Weingarten* was timely, clear, and definite. Accordingly, the majority is forced to argue that Ehlers' *Weingarten* rights were actually waived by her union when it negotiated the collective-bargaining agreement. This contention is contrary to the facts and the law.

As previously indicated, the *Weingarten* doctrine is statutory in nature. As adopted in Illinois, it is encompassed within the Illinois Public Labor Relations Act's guarantee to employees of the right "to engage in *** concerted activities *** for the purposes of collective bargaining or other mutual aid or protection" (5 ILCS 315/6 (West 1996)). Under fundamental principles of labor law, waiver of a statutorily protected right must be stated clearly and unmistakably. The language sustaining the waiver must be specific and evince an unequivocal intent to relinquish the right. Waiver is never presumed. See *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board*, 274 Ill. App. 3d 327, 334 (1995); *County of Cook v. Illinois Local Labor Relations Board*, 214 Ill. App. 3d 979, 987 (1991).

In what is a stretch even for this court, the majority asserts that the employees' *Weingarten* rights were expressly waived by the collective-bargaining agreement here. That is patently untrue. An express waiver would be the kind included in the collective-bargaining agreement at issue in the *Prudential Insurance Co.* case cited by the majority, where the employer was given the explicit right to interview employees outside of the presence of members of the union grievance committee. There is nothing in the collective-bargaining agreement here remotely analogous to that provision.

In an argument that can charitably be characterized as convoluted, the majority tries to tease a waiver out of the collective-bargaining agreement's incorporation of the Uniform Peace Officers' Disciplinary Act (50 ILCS 725/1 *et seq.* (West 1992)). To anyone viewing the collective-bargaining agreement objectively, however, it is clear that the purpose of the provisions incorporating the Uniform Disciplinary Act is not to forgo any right to union representation in informal proceedings, but to

ensure that employees enjoy the maximum protection possible during formal investigations. As the appellate court correctly reasoned,

> "[t]he standard announced in *Weingarten* and adopted in *Morgan* is different from and in addition to the guaranteed right of union representation set forth in section 3.9 of the Disciplinary Act. The Disciplinary Act does not subtract Ehlers' *Weingarten* right to union representation upon request in an informal inquiry but merely adds an additional guarantee of union representation in formal investigations." 289 Ill. App. 3d at 1127.

In sum, I would hold that the *Weingarten* doctrine applies to public employees covered by the Illinois Public Labor Relations Act, that *Weingarten* rights were not waived by the collective-bargaining agreement at issue in this case, and that Sergeant Ehlers properly invoked her *Weingarten* rights when questioned by Sheriff Kilquist. Under *Morgan*, the termination of Ehlers for refusing to continue in the absence of representation constitutes an unfair labor practice. The judgment of the appellate court reversing the circuit court's affirmance of the Merit Commission's decision discharging Ehlers for cause should therefore be affirmed, and Ehlers should be reinstated to her former position with back pay and benefits.