**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**No. 80–7714.**

United States Court of Appeals, Fifth Circuit.*
Unit B

Nov. 16, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Covington & Burling, Jerome Ackerman, Washington, D. C., for petitioner-cross respondent.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., J. Keith Gorham, for respondent-cross petitioner.

Isaac N. Groner, Cole & Groner, Washington, D. C., for intervenor.

Before TUTTLE, RONEY and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

This petition involves an employee's right to have a union representative present at an investigatory interview that the employee reasonably believes would result in disciplinary action. *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). The Prudential Insurance Company of America petitions this Court to set aside an order of the National Labor Relations Board requiring it to cease and desist from violating that *Weingarten* right. Finding that the Union waived the *Weingarten* right in its collective bargaining agreement with Prudential, we deny enforcement of the Board's order.

Neal Bowser was a district agent with Prudential. One of his responsibilities was to keep accurate premium payment records in an Agency Record Book (ARB) so the company could determine which policies were active and which had lapsed. Because of discrepancies in some of Bowser's records, his district manager conducted an audit of Bowser's ARB and found a number of policies whose current status could not be determined. A meeting with Bowser, his immediate supervisor, and the manager was set up for 11:15 a. m. on May 11, 1979. Bowser asked a union representative to attend the meeting, and the manager approved the request. Without advance notice, however, the meeting was moved up to 10:00 a. m. and started without the union representative. After five minutes of questioning about his ARB, Bowser asked for and was denied union representation. He continued the meeting under protest. Later, a union grievance committee member was denied permission to join the meeting as Bowser's representative. The manager subsequently recommended that Bowser be discharged.

The Union filed an unfair labor practice charge. The Administrative Law Judge found that although the interview was investigatory in nature, Bowser had no right to union representation because the information sought by Prudential was necessary for the conduct of its business and could only be obtained from Bowser. The Board,

however, reversed the ALJ and found an unfair labor practice.

The first question in a case like this is whether Bowser's meeting with his supervisor and manager was an interview covered by *Weingarten*. For the purpose of this decision, we assume that the *Weingarten* criteria were met: it was an investigatory interview in which Bowser was questioned about his ARB, records, and policies; he reasonably feared disciplinary action; and he asked for union representation. We assume Bowser had a right to have a union representative present during the interview unless it was waived.

Although Prudential argues that *Weingarten* should not apply to the insurance industry due to its special nature, no authority is cited for this proposition, the argument relies in part upon some of the arguments disregarded by the Supreme Court in *Weingarten*, and there is no base upon which this Court could build an exception to *Weingarten* for the insurance industry.

The question then is whether the bargaining agreement with the Union waives such right. By the express language in the agreement, it would seem to do just that. The agreement provides:

> The Union further agrees that neither the Union nor its members shall interfere with the right of the Employer: . . .
>
> To interview any Agent with respect to any phase of his work without the grievance committee being present.

Confronted with this language, the Board held that the clause did not effectively waive the *Weingarten* right because it was originally adopted before such right was recognized and it referred to "grievance committee" rather than "union representative."

■ Since the *Weingarten* right to representation at an interview with the employer "plainly effectuates the most fundamental purposes of the Act," *Weingarten*, 420 U.S. at 261, 95 S.Ct. at 966, an initial question is whether it can be waived by a union con-

tract. The *Weingarten* decision provides no clear indication whether a contractual waiver of this important right is permissible. 420 U.S. at 275 n.8 (Powell, J., dissenting). The Board has not yet ruled on the question of waiver, but the Board's General Counsel has issued a formal opinion holding that a waiver would be valid. *Southern California Edison Co.*, Case 31–CA–7526, 7 Advise Mem.Rptr. ¶ 17, 102 (Division of Advice, July 12, 1978).

■ Other congressionally given fundamental rights, such as the right to strike, may be bargained away contractually by the union. *See Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). *See also NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953). Since the right to representation only inheres upon the employee's request, it is clear that the employee's silence can be an effective waiver of the right. Since the individual can waive his *Weingarten* right and the Supreme Court has recognized the right of a contractual waiver for other such fundamental rights, it would appear that a contractual waiver of the *Weingarten* right is possible.

■ Identifying the *Weingarten* right as an individual right does not mean that it cannot be contractually waived by the union. A union is allowed a great deal of flexibility in serving its bargaining unit during contract negotiations. It makes concessions and accepts advantages it believes are in the best interest of the employees it represents. *See Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). This flexibility includes the right of the union to waive some employee rights, even the employee's individual statutory rights. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957); *NLRB v. Mid-States Metal Products, Inc.*, 403 F.2d 702, 704–05 (5th Cir. 1968). Courts which have invalidated a clear contractual waiver of an

employee's individual statutory right have done so only when the waived right affects the employee's right to exercise his basic choice of bargaining representative. *See NLRB v. Magnavox Co. of Tennessee*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974). *Compare NLRB v. Mid-States Metal Products, Inc.*, 403 F.2d 702 (5th Cir. 1968) *with Mason & Hanger-Silas Mason Co. v. NLRB*, 405 F.2d 1 (5th Cir. 1968). The union should therefore be able to waive the employee's *Weingarten* right for other concessions during negotiations.

■ Such a contractual waiver, however, must be "clear and unmistakable." *NLRB v. Item Co.*, 220 F.2d 956, 958–59 (5th Cir.), *cert. denied*, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746 (1955). The Board argues that the no-union-representation-at-interviews clause of the collective bargaining agreement is not a clear and unmistakable waiver because it was agreed to initially long before *Weingarten* was decided, because it contains a reference to "the grievance committee" being present rather than a "union representative," and because neither side focused on the *Weingarten* right in the negotiations. To understand what the parties intended by the contract clause it is necessary to review the history of negotiations affecting this clause.

■ Following an incident involving alleged harassment of an employee during an investigatory interview, the clause was put in Prudential's agreement with the Union in 1956. *Weingarten* was decided in 1975. There have been three agreements negotiated since *Weingarten*, and the record has numerous references to that decision. Prior to 1975, the Union negotiated for representation during all interviews. It has since negotiated for representation during all "abusive" interviews. The Union asserted a right, similar to *Weingarten*, to union representation at the request of the employee when the employee determined the interview was "abusive." The union representative, like the representative in *Wein-*

*garten*, would not actively participate in the interview. While the Union never stated it was expressly waiving the *Weingarten* right, the record of the negotiations indicate the Union was aware of *Weingarten* and that its attempt to have union representation at abusive meetings encompassed the *Weingarten*-type of interview.

Throughout the negotiations, Prudential maintained the stand that union representation in any employee interview was an interference with its business. Although the Union indicated that Prudential's position was contrary to the law, Prudential made clear that it considered the clause a waiver of the *Weingarten* right. Given Prudential's position and the Union's acquiescence, it is unmistakable that the Union waived the *Weingarten* right. Indeed, it is not clear what the clause waived if it did not waive the Union's *Weingarten* right. *Cf. Retail Clerks International Association Local No. 455, AFL–CIO v. NLRB*, 510 F.2d 802, 805 (D.C.Cir.1975) (contract provision should be interpreted to give it meaning). As for the reference to the "grievance committee" rather than to a "union representative," Prudential's practices recognize the grievance committee as essentially the same as the union representative in each district office.

We hold that the Union agreement waived the *Weingarten* right which was the basis of the unfair labor charge. We therefore deny enforcement of the Board's order.

ENFORCEMENT DENIED.