# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2010

No. 09-11170

Lyle W. Cayce
Clerk

TINA ESPINOZA,

Plaintiff–Appellant

v.

CARGILL MEAT SOLUTIONS CORPORATION,

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and O'CONNOR[*], District Judge.

EDWARD C. PRADO, Circuit Judge:

Tina Espinoza appeals the district court's grant of summary judgment in favor of Cargill Meat Solutions Corporation ("Cargill") on her negligence and gross negligence claims, stemming from an injury she incurred while working at Cargill's meat packing plant. The district court found that (1) Espinoza waived her right to sue Cargill under Texas tort law by electing to participate in the Cargill Meat Solutions Corporation Texas Occupational Temporary Disability Plan (the "Plan"); (2) § 301 of the Labor Management Relations Act

---

[*] District Judge of the Northern District of Texas, sitting by designation.

("LMRA"), 29 U.S.C. § 185(a), preempted her suit; and (3) Espinoza failed to exhaust the claims, grievance, and arbitration procedure (the "Claims Procedure") in the Plan and in Cargill's collective bargaining agreement ("CBA"). On appeal, Espinoza argues that (1) under Texas Labor Code ("TLC") § 406.033(e), her waiver was "void and unenforceable"; (2) § 301 of the LMRA does not preempt her suit because her negligence claim is not "inextricably intertwined" with any provision of Cargill's CBA; and (3) because she retained her right to sue, she need not follow the Claims Procedure.

Because Cargill offered its employees Workers' Compensation coverage, and TLC § 406.033(e)'s prohibition against waiver of an employee's right to sue only applies to an employer who does not offer coverage, Espinoza's waiver was valid and enforceable. Additionally, § 301 of the LMRA preempts Espinoza's suit because a sufficient nexus exists between the terms of the CBA and the elements of Espinoza's negligence cause of action for purposes of preemption. Finally, because Espinoza's waiver of her rights was enforceable, her failure to follow the Claims Procedure bars her suit. We therefore affirm the district court's grant of summary judgment in favor of Cargill.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since 2002, Cargill, a corporation operating a meat packing plant in Friona, Texas, has provided Workers' Compensation insurance for its employees. In addition to the Workers' Compensation insurance policy, Cargill instituted the Plan, which provides medical benefits so long as the injured claimant remains employed with Cargill. Upon commencement of employment, Cargill employees may: (1) receive protection under Cargill's Workers' Compensation insurance policy; (2) waive Workers' Compensation protection and retain the right to sue in tort; or (3) waive both Workers' Compensation protection and the right to sue in tort, and instead participate in the Plan.

No. 09-11170

On September 14, 2006, Cargill hired Espinoza.  On September 15, 2006—the day after her hiring—Espinoza signed a written waiver of Workers' Compensation insurance and an election to participate in the Plan.  The waiver states:

> I have reviewed (1) the [CBA] between Excel[1] and the United Food and Commercial Workers Local No. 540, AFL-CIO, as amended . . . , (2) a summary of the [Plan], and (3) the written Notice dated APRIL 15, 2002, that Excel now provides Workers' Compensation Insurance under the Texas Workers' Compensation Act (the Act), and I understand that I may make a choice as to the coverage I desire.
>
> **Therefore, I hereby WAIVE Workers' Compensation Insurance and make the election checked as follows:**

Under the bolded sentence, the waiver provides two options:

> In lieu of Workers' Compensation Insurance, I elect to be covered by the [Plan], and I understand that the exclusive and mandatory procedure for enforcing my rights will be the [Claims Procedure] under the Plan and the CBA.

> In lieu of Workers' Compensation Insurance and in lieu of coverage under the [Plan], I elect to retain my rights of action under common and statutory law.  I understand such rights will be subject to all defenses available to Excel under the common and statutory law. I further understand and agree that the exclusive and mandatory procedure for enforcing my rights will be the claim procedure provided in the CBA, including final and binding arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 2–13.

Espinoza initialed the first option.

Cargill also entered into a CBA with the United Food and Commercial Workers CLC Local #540, AFL-CIO (the "Union"), which governs the relationship between Cargill and its employees, including Espinoza.  The CBA dictates that the Plan is the sole mechanism for addressing workplace injuries,

---

[1] Cargill succeeded Excel through a name change.  The parties do not dispute that all relevant provisions are one and the same and are fully applicable to the instant litigation.

3

and states that the Union "waive[s] on behalf of itself and all bargaining unit employees, and [sic] any and all other causes of action which it or such employees possess outside said Disability Plan which may in any way relate to or arise out of an on the job accident, illness, or injury." If a claim is not resolved by the Plan's administrative procedures, an employee may then proceed to arbitration pursuant to the CBA, which is "final and binding upon all parties." The Plan also states that "there shall be no right to appeal."

On February 15, 2007, Espinoza injured her hand while operating a "butt bone" saw. After her injury, Espinoza began receiving medical and wage replacement benefits through the Plan. Although she received Plan benefits, she did not miss any time from work. She did not seek administrative review of her benefits through the Claims Procedure. On August 29, 2007, Cargill fired Espinoza, which also terminated her eligibility for Plan benefits. Espinoza subsequently filed this action against Cargill, alleging gross negligence and negligence for failing to properly train and supervise her, failing to adopt proper polices and procedures regarding operation of machinery, failing to provide safe equipment, and failing to provide a safe place of work.

Cargill filed a motion for summary judgment, which the district court granted. The district court found that Espinoza had waived her causes of action for torts when she elected to participate in the Plan, and that TLC § 406.033(e) did not render her waiver void and unenforceable because Cargill provided its employees with the option to retain coverage through Workers' Compensation insurance, thus remaining a "subscriber." The district court also held that § 301 of the LMRA preempted Espinoza's suit because the scope of Cargill's duties and Espinoza's remedies under the CBA were inextricably intertwined with the scope of Cargill's legal duty for purposes of Espinoza's negligence claim. Finally, the district court found that Espinoza's failure to follow the Claims Procedure precluded her negligence action. Espinoza timely appealed.

No. 09-11170

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291, and review "the district court's grant of summary judgment *de novo*, applying the same standard as the district court."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010) (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270 (5th Cir. 2008)).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

## III.  DISCUSSION

On appeal, Espinoza advances several arguments, the first alleging that the district court erred by finding her waiver of her right to sue Cargill valid and enforceable under TLC § 406.033(e).  Espinoza also argues that the district court erred by holding that § 301 of the LMRA preempts her cause of action because the legal duties upon which her negligence claim rests are not dependent upon an interpretation of the CBA, and are thus not inextricably intertwined with the CBA.  Finally, Espinoza contends that the district court erred by holding that her failure to initiate a claim through the Claims Procedure precludes her suit, because she is not seeking Plan benefits and is thus not required to participate in such procedures.

**A.    Espinoza's Waiver of Workers' Compensation Insurance Bars her Suit**

5

No. 09-11170

Espinoza's primary argument involves an application of TLC § 406.033. In relevant part, this provision reads:

> (a)  In an action against an employer who does not have workers compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:
>
> >  (1)  the employee was guilty of contributory negligence;
> >
> >  (2)  the employee assumed the risk of injury or death; or
> >
> >  (3)  the injury or death was caused by the negligence of a fellow employee. . . .
>
> (e)  A cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death.  Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable.

Espinoza offers several reasons for why we should find that her waiver of future actions against Cargill is void and unenforceable.  First, she contends that Cargill failed to provide evidence that it covered its employees with a Workers' Compensation insurance policy.  Alternatively, Espinoza claims that the legislative history behind TLC § 406.033(e) mandates that we treat Cargill as a non-subscribing employer because the Workers' Compensation insurance did not cover Espinoza for her injuries.  Finally, Espinoza argues that the options Cargill provides its employees with respect to workplace injury medical coverage are illegal.

### 1.    Evidence of Cargill's Insurance Policy

Espinoza argues that Cargill failed to demonstrate that it purchased a Workers' Compensation insurance policy.  Cargill responds that it provided sufficient evidence, including (1) the affidavit of Cargill's Vice President Brenda Smith-Pirkle, who stated that Cargill's predecessor Excel became a Workers' Compensation subscriber in 2002, and provided coverage at the Friona plant; (2)

6

the affidavit of the Friona Plant's Human Resources Manager, Margaret Renteria, who stated that Cargill provides Workers' Compensation insurance coverage for employees who desire it, as well as Plan coverage for those who do not[2]; (3) Espinoza's signed waiver of Workers' Compensation insurance coverage, which states that she reviewed "the written Notice dated APRIL 15, 2002, that Excel now provides Workers' Compensation Insurance"; and (4) Workers' Compensation insurance policy excerpts, which reference "Cargill, Incorporated" rather than "Cargill Meat Solutions Inc.," and which Cargill concedes do not specifically show that Cargill insured the workers at its Friona Plant. Espinoza challenges the sufficiency of this evidence and argues that no one at Cargill ever informed her that Cargill offered Workers' Compensation insurance coverage or explained Workers' Compensation to her.

Espinoza relies on *Morales v. Martin Resources, Inc.*, in which a Texas Court of Appeals reversed a grant of summary judgment in favor of an employer because the employer failed to provide evidence that it covered its employees under a Workers' Compensation policy. 183 S.W.3d 469, 473 (Tex. App.—Eastland 2005, no pet.). In that case, a temporary employee sued his staffing company and his temporary employer, Martin Resources, Inc., for negligence, after injuring his hand. *Id*. at 470. Martin Resources, Inc. submitted (1) an affidavit of an underwriting specialist with an insurance company stating that during the time in question, Martins Resources, Inc. had Workers' Compensation insurance coverage; (2) an affidavit from a Martin Resources, Inc. plant manager which stated that Martin Resources, Inc. had

---

[2] Espinoza takes issue with Renteria's reference to Workers Compensation "benefits" rather than a reference to an insurance policy, arguing that "evidence of a policy in this matter can only be inferred or assumed from Ms. Renteria's affidavit." Renteria's affidavit, however, very clearly asserts that Cargill provided a Workers' Compensation insurance plan to its employees, regardless of the terminology she adopted. We will therefore not draw Espinoza's suggested distinction between "policy" and "benefits."

Workers' Compensation insurance coverage when the employee injured his hand; and (3) a Workers' Compensation insurance policy, which insured "Martin Resource Management Corporation," rather than Martin Resources, Inc. *Id*. at 473. The *Morales* court found that, "[i]n the absence of any evidence explaining the relationship, if any, among these entities, the insurance policy presented by Martin Resources, Inc. created a fact issue as to whether Martin Resources, Inc. had workers' compensation insurance." *Id*. As such, "Martin Resources, Inc. failed to meet its summary judgment burden of establishing that it was covered by workers compensation insurance coverage at the time of Morales's injury." *Id*.

In response, Cargill directs us to *Esquivel v. Mapelli Meat Packing Co.*, in which another Texas Court of Appeals affirmed a grant of summary judgment in favor of an employer in a case where an employee challenged the existence of the employer's Workers' Compensation plan. 932 S.W.2d 612, 613–14 (Tex. App.—San Antonio 1996, writ denied). To prove coverage, the employer submitted an affidavit of a manager, which stated that at the time of the employee's injury, the employer's Workers' Compensation plan "was in full force and effect"; as well as an affidavit of an employee of the insurance company that underwrote the Workers' Compensation policy, stating that the employer was a subscriber. *Id*. at 615, 616–17. Because the employee "did not point out," nor did the *Esquivel* court find, "other evidence that controvert[ed] the factual assertions contained in" the employer's affidavits, the *Esquivel* court affirmed the grant of summary judgment in favor of the employer. *Id*. at 617.

We find *Esquivel* more analogous to this case. The *Morales* court reversed the district court's grant of summary judgment in favor of Martin Resources, Inc., citing existing fact issues. *See* 183 S.W.3d at 473. This implies that the employee in *Morales* offered proof that countered the affidavits produced by Martin Resources, Inc. In contrast, Espinoza has not provided any evidence to

counter the Smith-Perkle or Renteria affidavits, other than her assertion that no one from Cargill ever explained Workers' Compensation to her or informed her of its existence. Espinoza's lack of knowledge, however, cannot suffice to create a fact issue as to whether Cargill offered Workers' Compensation protection to its employees.[3] We thus find that Cargill provided sufficient evidence to conclude, as a matter of law, that Cargill had Workers' Compensation insurance.

## 2.    Classifying Cargill as a Subscribing Employer

Espinoza argues that, assuming Cargill did purchase Workers' Compensation insurance, it never covered Espinoza with it, and thus Cargill is more properly characterized as a "non-subscribing" employer for purposes of TLC § 406.033. Cargill, however, is most fairly characterized as a subscribing employer. TLC § 406.033(e) provides that an employee may not waive "[a] cause of action *described in Subsection (a)*," and that "[a]ny agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable." (emphasis added). Subsection (a) of TLC § 406.033, in turn, refers to "an action against an *employer who does not have workers' compensation insurance coverage* to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment." (emphasis added). Because TLC § 406.033(a) refers only to whether an *employer* has Workers' Compensation insurance coverage, and not to whether an *individual employee* has been covered by his or her employer's Workers' Compensation policy, the operation of TLC § 406.033(e)'s bar does not

---

[3] Additionally, Espinoza's assertion is belied by the waiver she signed, which states that she "reviewed . . . the written Notice dated APRIL 15, 2002, that Excel now provides Workers' Compensation Insurance under the Texas Workers' Compensation Act (the Act), and . . . understand[s] that [she] may make a choice as to the coverage [she] desire[s]." Texas law charges a person with knowledge of the contents of a document he or she signs. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008).

apply to Cargill—an employer who has Workers' Compensation coverage—irrespective of Espinoza's decision to opt-out.

### 3.    Legality of Cargill's Options

Espinoza also argues that Texas labor law does not permit the three choices Cargill offers its employees. Workers such as Espinoza are always at liberty to decline their employer's Workers' Compensation insurance coverage. *See* TLC § 406.034(b) ("An employee who desires to retain the common-law right of action to recover damages for personal injuries or death shall notify the employer in writing that the employee waives coverage under this subtitle and retains all rights of action under common law."). Espinoza, however, interprets TLC § 406.034 as mandating that employees either retain the Workers' Compensation coverage provided by their employer, or retain their right to sue in tort for personal injuries, and contends that TLC § 406.034 does not permit a third option where an employee opts out of Workers' Compensation coverage *and* waives his or her right to sue in tort.

Reading TLC § 406.034 in conjunction with TLC § 406.033, however, demonstrates that Espinoza's "either or" argument is not a reasonable interpretation of Texas's Workers' Compensation Act as a whole. *See generally Tex. Workers' Comp. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) ("[W]e do not view disputed portions of a statute in isolation.") (citation omitted). While it is true that TLC § 406.034 states that an employee may opt out of Workers' Compensation by providing his or her employer with his or her intention to retain the right to sue in tort, the plain terms of TLC § 406.033 allow the same employee to waive his or her right to sue, so long as the employer has Workers' Compensation insurance. Therefore, Espinoza was at liberty to waive both her right to sue in tort and Cargill's Workers' Compensation coverage without her waiver becoming "void and unenforceable." TLC § 406.033(e). We thus find that Espinoza's waiver was valid and enforceable.

10

No. 09-11170

### 4.    Espinoza's Other Arguments

Espinoza argues that the legislative history behind the passage of TLC § 406.033(e), when read in conjunction with the rest of Texas's Workers' Compensation Act, demonstrates the Texas Legislature's intent to prohibit the sort of waiver that Cargill procured from Espinoza. The Texas Supreme Court, however, has stated that a statute's "enacted language is what constitutes the law, and when a statute's words are unambiguous and yield a single inescapable interpretation, the judge's inquiry is at an end." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006) (citation omitted). The operation of TLC § 406.033(e), and its interplay with TLC § 406.034, is unambiguous. We thus find that Espinoza's legislative history argument fails.

Espinoza also makes the unsupported contention that Cargill only provided "a minimal policy which covers no one." She uses this assertion to support her argument that Cargill "funnels" new employees into its Plan in a scheme to make an end run around Texas's Workers' Compensation Act. Espinoza, however, offers no evidence to demonstrate that Cargill bought only a "minimal policy." We will not give credence to this unsupported assertion.

In several instances, Espinoza seems to argue that she was not bound by her signed waiver because no one at Cargill explained it to her. As noted by Cargill, Texas law charges a person with knowledge of the contents of a document he or she signs. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d at 232. To the extent that Espinoza makes this argument, it lacks merit.

Finally, Espinoza argues that Cargill's system "seriously endanger[s] the Workers' Compensation system in Texas." We fail to see how this is the case. By operation of Texas's Workers' Compensation law, Espinoza was covered by Cargill's Workers' Compensation program, and would have remained covered had she not signed a waiver within five days of starting her employment. Because Cargill's employees remain covered by Workers' Compensation as long

11

as they choose to be, Cargill's system is entirely consistent with Texas's Workers' Compensation Act.

## B.    The Waiver in the CBA was Valid, Thus Barring Espinoza's Suit

Although the district court did not address this issue, Espinoza argues that the Union's agreement with Cargill in the CBA, stating that "[a]ny and all claims, causes of action or controversy arising out of or otherwise related to on the job . . . injuries shall be covered and administered pursuant to . . . [the] Plan," also violates TLC § 406.033(e).  Espinoza asserts that Cargill would breach the CBA if it covered her with Workers' Compensation insurance. According to Espinoza, because Cargill was contractually obligated not to cover its employees with Workers' Compensation insurance, the CBA's waiver of Union employees' right to sue was void as a contractual provision that violates the law.

In general, unions are the "exclusive representatives of all the employees in [a] unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment," 29 U.S.C. § 159(a), and are "allowed a great deal of flexibility in serving [their] bargaining unit[s] during contract negotiations." *Prudential Ins. Co. of Am. v. NLRB*, 661 F.2d 398, 400 (5th Cir. 1981).  "This flexibility includes the right of the union to waive some employee rights, even the employee's individual statutory rights." *Id.* (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1967)); *see also Cupit v. Waltz*, 90 F.3d 107, 109 (5th Cir. 1996) (noting that a union has the authority to bargain away an employee's right to sue for workplace injuries).  "Courts which have invalidated a clear contractual waiver of an employee's individual statutory right have done so only when the waived right affects the employee's right to exercise his basic choice of bargaining representative." *Prudential Ins. Co. of Am.*, 661 F.2d at 400–01 (citing *NLRB v. Magnavox of Tenn.*, 415 U.S. 322 (1974)).

12

No. 09-11170

The Union, as Espinoza's "exclusive representative," 29 U.S.C. § 159(a), had the authority to waive her right to sue, so long as Texas law permitted the waiver. *See Cupit*, 90 F.3d at 109. As discussed above, Espinoza's simultaneous waiver of both Cargill's Workers' Compensation protection and her right to sue in tort was valid and enforceable under TLC § 406.033. Because Espinoza was at liberty to waive her right to sue in tort, the Union, through the CBA, could also do so on her behalf. We therefore find that the CBA provision mandating that the Plan cover and administer all workplace injuries was valid and enforceable.

C.    **Section 301 of the LMRA Preempts Espinoza's Suit**

Espinoza also argues that the district court erred when it held that § 301 of the LMRA preempts her claims because they are neither "inextricably intertwined" with the terms of the CBA, nor do they require interpretation of the CBA. Section 301 of the LMRA does not specifically address preemption; rather, it provides federal jurisdiction for suits involving CBA disputes.[4] The Supreme Court, however, has held that "§ 301 expresses a federal policy that the substantive law to apply in § 301 cases is federal law, which the courts must fashion from the policy of our national labor laws," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (citation and internal quotation marks omitted), and that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the areas covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Id.* (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962)). As noted by the *Allis-Chalmers*

---

[4] "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

No. 09-11170

Court, "[a] state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id*. at 210.

The *Allis-Chalmers* Court, however, went further, stating "[i]f the policies that animate § 301 are to be given their proper range, . . . the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Id*. In other words:

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."

*Id*. at 211. Noting that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301," *id*., the Supreme Court defined the contours of § 301 preemption, holding that "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id*. at 213. The Supreme Court then directed courts to inquire as to "whether evaluation of [a] tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id*.

We have elaborated on these general principles in the context of a negligence suit by an employee against an employer, holding that "such preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation" of a CBA. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996) (per curiam). We also held that "[t]o determine if adjudicating the claim requires interpreting the terms of a CBA, a court is required first to analyze the elements of the tort at issue." *Id*. In *Richter*, a trucker permanently injured himself in a slip and fall accident

14

while working, and sued his employer for negligence and gross negligence. *Id*. After noting that "[t]he CBA at issue provide[d] the exclusive remedy for settling disputes involving negligence on the part of the Company," and that it also stated that "in any proceeding concerning an injury . . . sustained in the course of employment . . . the Company further agrees to waive its common law defenses," we found that "the application of state law requires interpretation of the" CBA, and thus held that § 301 of the LMRA preempted the employee's negligence claim. *Id*. at 97–98.

Our decision in *Navarro v. Excel Corp.*, No. 01-11508, 2002 WL 31049478 (5th Cir. Sept. 5, 2002) (per curiam) (unpublished), also carries significant persuasive force. The plaintiff in *Navarro* injured her arm while working, and sued her employer for negligence. *Id*. at *1. We were presented with the question of "whether adjudicating [the employee's] negligence claim would require a court to interpret or apply the terms of the CBA." *Id*. We noted that "the CBA requires [the employer] to create safety and grievance committees, allow paid rest periods, and give employees protective equipment," and that "[p]rocedurally, the CBA provides compensation and remedial procedures, including arbitration, to resolve workplace injury claims." *Id*. Although the employee did not "allege a breach of the CBA, a court still would have to determine the scope of [the employer's] duties and [the plaintiff's] remedies under the CBA in order to define the scope of [the employer's] legal duty for purposes of a negligence claim." *Id*. Therefore, we held that § 301 of the LMRA preempted the employee's suit. *Id*.

Here, Espinoza brought Texas state law claims for negligence, requiring as assessment of (1) Cargill's legal duty, (2) whether Cargill breached that duty, and (3) whether damages were proximately caused by that breach. *IHS Cedars*

*Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).[5] The CBA acknowledges Cargill's responsibility to provide a safe workplace, correct unsafe conditions, institute a safety committee, and provide a grievance committee. Additionally, the CBA details the procedure and scope of the remedies available to Cargill employees injured while working. Because "a court would still have to determine the scope" of Cargill's duties—such as its duty under the CBA to provide safety committees and ameliorate unsafe conditions—and Espinoza's "remedies under the CBA[,] in order to define the scope of" Cargill's "legal duty for purposes of a negligence claim," it follows that Espinoza's claims will involve an interpretation of the terms of the CBA. *See Navarro*, 2002 WL 31049478, at *1.

Espinoza's arguments to the contrary are unavailing. The CBA does not "merely acknowledge[] Cargill's duty to provide a safe workplace for its employees"; instead, it helps define that duty by mandating such things as plant inspections, safety committees for each shift, and the provision of safety equipment. Likewise, Espinoza is incorrect when she posits that "[t]he CBA has no bearing on Cargill's duties as an employer in this situation"; rather the CBA "*imposes* duties" on Cargill. *Id*. (emphasis added). The question is not, as Espinoza suggests, whether a duty "emanates from Texas law" or from contract; it is whether "state-law rights and obligations . . . exist independently of private agreements." *Allis-Chalmers Corp.*, 471 U.S. at 213. Because the duty giving rise to Espinoza's state law negligence claim, as well as her available remedies for Cargill's alleged breach of that duty, will involve an interpretation of the CBA, we hold that § 301 of the LMRA preempts Espinoza's state law claims.

---

[5] Espinoza provides no analysis regarding the elements of her gross negligence claim, save for mentioning that she included it in her complaint. We thus find that she waived any arguments as to § 301 of the LMRA's preemption of this claim. FED. R. APP. P. 28(a)(5); *see Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 865 n.6 (5th Cir. 2010) (citing *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994)).

No. 09-11170

**D.    Espinoza's Failure to Follow the Claims Procedure under the Plan and the CBA Bars her Suit**

Espinoza argues that the district court erred when it held that her failure to follow the claims procedure in the Plan or the arbitration provision of the CBA precludes her suit.  First, Espinoza reiterates her argument that the pre-injury waiver of her right to sue in the CBA is void and unenforceable.  She then notes that the Plan only addresses claims for Plan benefits, and because she seeks damages, she argues that the Claims Procedure does not apply.  Finally, Espinoza argues that she no longer worked for Cargill when she filed her suit, and thus the Claims Procedure could not protect her.

Espinoza's arguments are without merit.  We have determined that her waiver was valid, and her election into the Plan meant that she was entitled only to Plan benefits to remedy her injury.  Her choice also had the effect of mandating that the Plan, the CBA, and the Claims Procedure govern any grievances Espinoza raised concerning the administration of the Plan's benefits.

As such, Espinoza's contention that she does not seek Plan benefits through her cause of action is immaterial; Espinoza had no legal right to anything except Plan benefits.  Additionally, her argument that she no longer has access to the Claims Procedure is misleading.  As noted by Cargill, Espinoza's alleged cause of action accrued while Cargill employed her, making her subject to the procedural requirements of the Plan and the CBA, and her termination six months later affected neither her rights nor her procedural requirements, and certainly did not affect the waiver of her right to sue in tort. Because the CBA provides the only mechanism for adjudicating her claim, and because Espinoza concedes that she did not avail herself of the Claims Procedure, we find that Espinoza's claims are precluded.

17

No. 09-11170

## IV. CONCLUSION

Espinoza waived her right to sue Cargill for work-related injuries, and under Texas labor law, her waiver is valid and enforceable. Because the Union also had the authority to waive her right to sue, the Union's waiver in the CBA is also valid and enforceable. Additionally, § 301 of the LMRA bars Espinoza's state law tort claim because adjudication of Cargill's duty and Espinoza's remedies will involve interpreting the terms of the CBA. Finally, Espinoza's suit is barred because she failed to exhaust the Claims Procedure. For these reasons, we affirm the district court's grant of summary judgment in favor of Cargill.

AFFIRMED.