# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2012

No. 11-30050

Lyle W. Cayce
Clerk

HERBERT ALLEN MCKNIGHT,

Plaintiff-Appellant

v.

DRESSER, INCORPORATED,

Defendant-Appellee

--------------------------------------------------------------------------------------------------------
consolidated with
Case No. 11-30072

HABEN LACHNEY,

Plaintiff-Appellant

v.

DRESSER, INCORPORATED,

Defendant-Appellee

--------------------------------------------------------------------------------------------------------
consolidated with
Case No. 11-30104

FOSTER L. ANDERSON; JASON J. AYMOND; HARRY BONTON; QUINCY C. BOYD; BILLY G. BRUNSON; ET AL,

Plaintiffs-Appellants

v.

DRESSER, INCORPORATED,

No. 11-30050

Defendant-Appellee

Appeals from the United States District Court
for the Western District of Louisiana

Before GARZA, CLEMENT, and SOUTHWICK, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In a consolidated appeal, Plaintiffs-Appellants contend that the district court erred in denying their motions to remand and in dismissing their workplace safety claims as time-barred. For the following reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

**I**

Defendant-Appellee Dresser, Inc., ("Dresser") is an industrial valve manufacturer with facilities in the state of Louisiana. Appellants all worked for Dresser at some point in the last four decades, their respective employments terminating at various times between 1977 and 2009. In 2010, Plaintiffs-Appellants Herbert Allen McKnight, Haben J. Lachney, and Foster L. Anderson, along with 42 other plaintiffs, filed three separate suits in Louisiana state court against Dresser. McKnight's and Lachney's complaints alleged that Dresser had been negligent in failing to maintain a safe workplace, and Anderson's complaint alleged negligence, strict liability, and fraudulent misrepresentation. In all three suits, Appellants claimed that Dresser failed to properly monitor and mitigate exposure to loud noise at Dresser's industrial facility, and that these failures led to long-term hearing loss. Appellants sought damages for these injuries.

Dresser removed the actions to federal court pursuant to § 301 of the Labor Management Relations Act ("LMRA"), which grants federal jurisdiction

2

No. 11-30050

over state law claims that require interpretation of a collective bargaining agreement ("CBA"). Dresser asserted that the state court could not adjudicate Appellants' tort claims without interpreting the parties' CBA,[1] and that the district court therefore had jurisdiction under § 301. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) ("[A]n application of state law is pre-empted by § 301 of the [LMRA] only if such application requires the interpretation of a collective-bargaining agreement."). Appellants filed motions to remand, contending that their tort claims were independent of the CBA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212-213 (1985) (holding that § 301 does not preempt state law claims based on non-negotiable, independent rights).

The district court adopted the recommendation of the magistrate judge and denied Appellants' motions to remand, citing *Navarro v. Excel Corp.*, 48 F. App'x 481 (5th Cir. 2002) (per curiam) (unpublished) (holding that § 301 preempted plaintiff's state law claims because the parties' CBA imposed duties on the employer with regard to workplace safety, and the court would have to interpret the CBA to ascertain the employer's duties). The district court then granted Dresser's Rule 12(b)(6) motions to dismiss, concluding that Appellants'

---

[1] The CBA in this case provided, among other things, that Dresser would (1) furnish all required safety equipment, (2) institute reasonable and necessary precautions for safeguarding health and safety, (3) not deduct pay for union safety representatives based on time spent carrying out their duties, and (4) conduct a joint safety inspection with the union on the 15th of every month. The CBA also stipulated that matters of occupational safety and health would be handled between employees and their supervisors, and if the matters remained unresolved, they would be reported to the union safety representative.

No. 11-30050

complaints were untimely under the applicable federal statute of limitations.[2]
Appellants filed notices of appeal, and the three actions were consolidated.

We review the district court's denial of Appellants' motions to remand, the propriety of removal under § 301, and the existence of subject matter jurisdiction as interrelated questions of law subject to de novo review. *See Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011) (citing *Kollar v. United Transp. Union*, 83 F.3d 124, 125 (5th Cir. 1996)).

## II

Appellants' primary contention on appeal is that the district court erred in relying on *Navarro* because this case involves non-waivable Louisiana workplace safety claims, rather than waivable Texas claims. Specifically, Appellants urge this court to adopt the reasoning of the Eastern District of Louisiana in *Arceneaux v. Amstar Corp.*, No. 03-3588, 2004 WL 574718 (E.D. La. Mar. 22, 2004). *See id.* at \*4 (holding that § 301 did not preempt Louisiana plaintiff's state workplace safety claims, even though the parties' CBA addressed workplace safety, because plaintiff was asserting independent, nonnegotiable state law rights). Dresser counters that this court's decision in *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432 (5th Cir. 2010), is controlling. *See id.* at 442-44 (citing *Navarro* and holding that § 301 preempted Texas plaintiff's state workplace safety claims because the CBA helped define employer's duty to provide a safe workplace).

---

[2] The district court, citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983), applied a federal statute of limitations of six months from the date the Appellants received notice of their injuries and concluded that Appellants' claims were untimely on their face. Appellants contend on appeal that the district court should have instead applied Louisiana's one-year prescription for tort actions. Because we ultimately conclude that the district court should have granted Appellants' motions to remand and was without jurisdiction to grant the motions to dismiss, we do not address this issue.

No. 11-30050

A

Congress has dictated that federal courts have jurisdiction over all cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, the "well-pleaded complaint" rule requires that, for a federal court to have "arising under" jurisdiction, the plaintiff's federal law claims must appear on the face of the complaint. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Thus, if a complaint pleads only state law claims, a federal court generally does not have jurisdiction over that complaint, even if the defendant asserts preemption as an affirmative defense. *Gutierrez v. Flores*, 543 F.3d 248, 251-52 (5th Cir. 2008).

However, the complete preemption doctrine presents a narrow exception to the well-pleaded complaint rule. *See Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000) ("Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.") (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). Unlike ordinary preemption, complete preemption is jurisdictional in nature, and "[a]s such, it authorizes removal to federal court even if the complaint is artfully pleaded to include solely state law claims . . . ." *Id.* (quoting *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 500 (5th Cir. 1999)).

The Supreme Court has applied complete preemption in a small number of areas, one of which is cases involving § 301 of the LMRA. *Avco Corp. v. Machinists,* 390 U.S. 557 (1968). Enacted by Congress to ensure uniformity in the interpretation of CBAs, § 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .

29 U.S.C. § 185(a). In *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962), the Court explained that, "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.* at 104. Thus, any state court suit alleging violation of a labor contract must be brought under § 301 and resolved under federal law. *See id.* at 103. The Supreme Court has also held that § 301 preemption may apply to tort claims as well. *See Allis-Chalmers*, 471 U.S. at 210-11. The Court in *Allis-Chalmers* reasoned that:

> If the policies that animate § 301 are to be given their proper range . . . the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. . . . [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.*

However, the *Allis-Chalmers* Court limited its holding to tort suits involving "state-law rights and obligations that do not exist independently of private agreements." *Id.* at 212-13 ("[I]t would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."). The Court explained that § 301 preemption of state tort claims is only proper where "resolution of [the] state-law claim is substantially dependent upon analysis of the terms of [the] agreement made between the parties in a labor contract . . . ." *Id.* at 220. The focus of such an analysis is whether the state tort action "confers nonnegotiable state-law rights . . . independent of any right established by contract" or instead "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

No. 11-30050

The narrow issue for our review is thus whether (1) Appellants' claims are "inextricably intertwined" with the CBA, in which case the district court was correct to deny Appellants' motion to remand, or (2) Appellants' claims are based on independent, non-negotiable state law rights, in which case the district court was without jurisdiction and erred in denying the motion to remand.

### B

Appellants contend that *Arceneaux v. Amstar Corp.*, No. 03-3588, 2004 WL 574718 (E.D. La. Mar. 22, 2004) provides the proper analysis. In *Arceneaux*, the plaintiffs brought Louisiana state law claims seeking damages for gradual hearing loss under LA. REV. STAT. § 23:13, which requires all Louisiana employers to provide a "reasonably safe" workplace. *Id.* at *1. The employer removed the case to federal court, asserting § 301 preemption. *Id.* The district court granted the plaintiffs' motion to remand, reasoning as follows:

> To establish a violation of Section 23:13 against an employer, a plaintiff must establish "that her accident and injuries were caused by an unreasonable risk of harm created by the employer's failure to properly fulfill the duties imposed by the . . . statute." *Jones v. Trailer*, 636 So. 2d 1112, 1116 (La. Ct. App. 1994). Here, not one allegation in plaintiffs' complaint relies on or refers to the CBA. Indeed, plaintiffs' complaint specifically alleges that defendants did not comply with state and federal regulations concerning workplace exposure to noise. Plaintiffs do not allege that defendants violated the applicable health and safety provisions of the CBA. To determine whether defendants violated their duty to plaintiffs, a court need look only as far as Louisiana Revised Statute § 23:13. As noted by the Louisiana courts of appeals, to determine whether an employer has violated Section 23:13, the court must examine only whether the employer fulfilled his duties *imposed by the statute*. *See Jones*, 636 So. 2d at 1116. Contract interpretation is not required here to determine whether the employer is liable in tort.

*Id.* at *4. Appellants contend that they, like the plaintiffs in *Arceneaux*, brought independent claims under Louisiana law which the state court may adjudicate without interpreting the parties' CBA.

7

No. 11-30050

Dresser counters that this court's decision in *Espinoza* is dispositive.  In *Espinoza*, the plaintiff brought a negligence claim under Texas law against her employer Cargill after suffering a hand injury while operating a company saw. *Espinoza*, 622 F.3d at 437.  This court concluded that § 301 authorized removal of Espinoza's state law claim because ascertaining Cargill's duties and Espinoza's remedies would involve interpreting the terms of the CBA.  *Id.* at 445.  The *Espinoza* court explained that "the CBA [did] not 'merely acknowledge [ ] Cargill's duty to provide a safe workplace for its employees'; instead, it help[ed] define that duty by mandating such things as plant inspections, safety committees for each shift, and the provision of safety equipment."  *Id.* at 444. As Dresser notes, the CBA in the present case similarly contains specific duties such as the duty to provide safety equipment, to institute precautions, not to deduct pay for union safety representatives for time spent carrying out their duties, and to conduct safety inspections.  According to Dresser, *Espinoza* stands for the proposition that, if a CBA elaborates on workplace safety in this way, adjudication of a state workplace safety claim requires interpretation of the CBA.

However, the *Espinoza* court also found it significant that Espinoza had waived her state law claims, as Texas law allows.  *Id.* at 443 ("[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result *can be waived* or altered by agreement of the parties, are pre-empted by those agreements.") (quoting *Allis-Chalmers*, 471 U.S. at 213) (emphasis added)).  In this way, Appellants' Louisiana workplace safety claims are different from the Texas law claims in *Espinoza*.[3]  Unlike Texas, Louisiana not only places

---

[3] Dresser and the district court also cited the line of cases leading to *Espinoza*, including *Navarro*.  But *Navarro*, and all of the Fifth Circuit cases on which *Navarro* relied, involved plaintiffs who, like Espinoza, were limited to claims under the CBA because they had waived their state law claims.  *See Navarro*, 48 F. App'x at *1 ("The CBA's disability plan requires an employee to waive her right to sue in return for Excel's providing a claims

a duty on employers to provide a safe work environment, it expressly forbids the waiver of that duty in a CBA. *See* LA. REV. STAT. § 23:13 ("Every employer shall furnish employment which shall be reasonably safe for the employees therein."); *id.* at § 23:1033 ("No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided."). In other words, Louisiana workplace safety claims are based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption.[4] This distinction is no less important because a claim raises the same questions and implicates the same facts as a claim under the parties' CBA. *See Lingle,* 486 U.S. at 409-10 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

Alternatively, Dresser contends that, even if the state law rights are independent, interpretation of the CBA is necessary because Louisiana law provides no "objective standard" for determining whether Dresser has provided

---

procedure for disability benefits."); *Cupit v. Walts*, 90 F.3d 107, 109 (5th Cir. 1996) ("In lieu of subscribing to the Texas Workers' Compensation Act, the Company agrees to provide directly to its employees the compensation and benefits otherwise available . . . ."); *Richter v. Merch. Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir. 1996) ("The CBA at issue provides the exclusive remedy for settling disputes involving negligence on the part of the Company . . . .").

[4] Dresser contends that, because the National Labor Relations Act ("NLRA") requires bargaining over workplace safety, Louisiana's right to a safe workplace cannot be "non-negotiable." *See* 29 U.S.C. § 158(d); *NLRB v. Gulf Power Co.*, 384 F.2d 822, 825 (5th Cir. 1967) (holding that "safety rules and practices . . . are undoubtedly conditions of employment, and . . . Section 8(d) requires good faith bargaining as a mutual obligation of the employer and the Union in connection with such matters"). However, the fact that the NLRA requires employers to bargain health and safety provisions in a CBA does not mean that a state like Louisiana may not also grant employees independent, non-negotiable state law rights and forbid employers from bargaining those rights away.

No. 11-30050

a reasonably safe work environment.  We disagree.  First, Louisiana statutory law articulates a duty which goes beyond a vague mandate for workplace safety:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein.  They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

LA. REV. STAT. § 23:13.  Second, a substantial body of Louisiana and Fifth Circuit case law applies § 23:13 and general tort principles to negligence claims in the complete absence of a CBA.[5]  In other words, Louisiana law not only states an employer's duty under § 23:13, but also fleshes out the contours of that duty in specific fact scenarios.  Resort to the parties' contract is not *required* to determine whether Dresser violated these independent, non-negotiable duties.

Lastly, Dresser expresses concern that, if we adopt the analysis presented in *Arceneaux*, all Louisiana safety claims arising under any CBA in Louisiana

---

[5] *See, e.g.*, *Jones v. Trailor*, 93-2144 (La. App. 4 Cir. 4/28/94); 636 So. 2d 1112, 1116 (holding that, to establish a violation of § 23:13, a plaintiff must establish "that her accident and injuries were caused by an unreasonable risk of harm created by the employer's failure to properly fulfill the duties imposed by the . . . statute"); *Vega v. S. Scrap Material Co.*, 517 F.2d 254, 258-59 (5th Cir. 1975) ("Southern Scrap had a duty as employer to provide decedent with a safe place to work, LA. REV. STAT. 23:13; . . . . [T]he breach of the duty imposed by the employment or agency relationship may, under general tort principles, be actionable negligence because of the creation or maintenance thereby of an undue risk of harm to others."); *Kavanaugh v. Orleans Parish Sch. Bd.*, CA 4588 (La. App. 4 Cir. 4/11/86); 487 So. 2d 533, 533 (holding that liability under § 23:13 requires an analysis of the foreseeability of harm); *Lytell v. Hushfield*, 81-2117 (La. 1/25/82); 408 So. 2d 1344, 1347-48 (holding that an employer's duty under § 23:13 includes providing safe equipment used in connection with work); *Guidry v. Coregis Ins. Co.*, 04-325 (La. App. 3 Cir. 12/29/04); 896 So. 2d 164, 178-79 (holding that a company was liable for dangerous power lines because they posed a normal hazard to employees and the danger was a frequent topic of conversation among its employees); *Miller v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 13302 (La. App. 2 Cir. 8/29/77); 349 So. 2d 1353, 1363 (holding that failure of employer to use extraordinary care and take every precaution against injury does not constitute actionable negligence).

10

will be subject to state law analysis rather than a common body of federal law. These concerns are misplaced. The fact that Louisiana state law establishes non-negotiable rights and obligations with respect to workplace safety does not prevent employers and employees from contracting for other rights and obligations outside those found in Louisiana law, and enforcing them with a contract suit. If this takes place, § 301 will require that those claims be heard in federal court. Likewise, a tort claim that incorporates specific duties from a CBA may also be subject to removal under § 301, even if such a claim is labeled as a negligence claim. But where a plaintiff, like Appellants in this case, brings a negligence claim based on independent, non-negotiable state law rights, and his complaint neither refers to nor relies on the CBA, such a claim will not be subject to § 301 preemption.[6]

On the other hand, deciding this case under *Espinoza* would allow Louisiana employers to remove all state workplace safety claims to federal court as long as the governing CBA made reference with some specificity to workplace safety, even though Louisiana law prevents the waiver of state law claims. This was not the intent of § 301. *See Allis-Chalmers*, 471 U.S. at 211-12 ("Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law. . . . Such a rule of law would delegate to unions and unionized employers the power to

---

[6] Dresser points to no specific language in Appellants' complaints which was borrowed from the CBA, neither does our review of the complaints reveal any. Instead, Dresser attempts to tie duties found in the CBA to various dissimilar duties alleged in Appellants' complaint. For example, Dresser contends that the complaints' allegations that Dresser had a duty "to see that Plaintiffs performed the duties pertaining to his work in a proper, safe and workmanlike manner" or "to see that proper safety rules were adopted, promulgated, and enforced as concerned the use of hearing protection devices and other protective equipment for all individuals entering its facilities" are really references to the duty contained in the CBA to provide for joint safety inspections on the 15th of every month. *See* Appellants' Br. at 32-34. We do not think that these comparisons, or the others made by Dresser, between Appellants' complaints and the CBA demonstrate that Appellants were merely masquerading contract claims as tort claims.

exempt themselves from whatever state labor standards they disfavored."); *Arceneaux*, 2004 WL 574718, at *3 ("To hold otherwise would provide employers and labor unions the opportunity to place broad terms such as 'health and safety' in a CBA in order to skirt liability under state law.  This is not the purpose of Section 301 preemption.").

### III

In conclusion, Dresser owed Appellants duties under the CBA and simultaneously owed non-negotiable, independent duties under Louisiana tort law.  These duties formed the bases for two distinct types of claims—contract and tort—either of which Appellants may have brought before the district court.  Appellants chose to sue in tort, without reference to the CBA, and their claims may be adjudicated by sole resort to Louisiana tort law.  Applying the Supreme Court's construction of § 301, the district court was without jurisdiction and therefore erred in denying the motions to remand and in granting the motions to dismiss.  Accordingly, the judgment is REVERSED and REMANDED for proceedings consistent with this ruling.